CHARLES MILLER *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.   December 11, 1899. — March 1, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Personal Injuries — Railroad — Master and Servant — Action.*

If a railroad corporation furnishes for the use of its servants a sufficient supply of suitable links for connecting its cars, it is not bound to keep the links used in proper condition, or to prevent the use of dangerous and unsuitable links.

TORT, for personal injuries sustained by the plaintiff while in the defendant's employ as a brakeman.   At the trial in the Superior Court, before *Blodgett,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*J. H. Benton, Jr. & C. F. Choate, Jr.,* for the defendant.

*G. W. Anderson & S. A. Fuller,* for the plaintiff.

MORTON, J.   The plaintiff was head-end brakeman, and was standing on the car next to the engine, waiting to pass to the engineer signals from the rear end of the train, when the link

connecting with the engine the car on which he stood, broke, causing the air brake to set, and bringing the train to a stop with a jerk which threw the plaintiff off and caused the injury complained of.

There was evidence tending to show that the plaintiff was in the exercise of due care and that the link had become worn and brittle from use. There was nothing to show whether the link had been originally furnished by the defendant, or whether it came from some other road. The undisputed testimony showed that the defendant furnished and kept on hand a suitable supply of links for the use of brakemen and conductors on freight trains, to which they had convenient access at all times, and that the brakemen and conductors were accustomed when they saw cracked or broken links, or links that were liable to break, to throw them out and replace them with others.

The court instructed the jury that if the link was one of those furnished by the defendant, " then it was the duty of the defendant to use proper care to furnish secure and proper links, and to keep them in such a condition that they should be proper and sufficient for work to be done by them"; and again that " it was the duty of the defendant to use reasonable care to provide suitable links and to prevent the use of unsuitable and dangerous links." If the link came from another road, then, the court instructed the jury, " the duty of the defendant corporation was not to provide a suitable link, and to do what was necessary to keep the coupling link in proper condition with the strength it ought to have for the purpose for which it was to be used, but it was the duty of inspection, inspecting the link in question by competent and proper persons."

The defendant duly objected, and excepted to the instructions thus given. It seems to us that the instructions went too far in requiring that the defendant should keep the links that it furnished in a proper condition to do the work for which they were furnished and should prevent the use of dangerous and unsuitable links. We think that in respect to the links which it furnished the defendant did its whole duty when it furnished a sufficient supply of suitable links, and that it was not bound to keep the links used in proper condition or to prevent the use

of dangerous and unsuitable links. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *McGee* v. *Boston Cordage Co.* 139 Mass. 445. *McKinnon* v. *Norcross,* 148 Mass. 533. *Thyng* v. *Fitchburg Railroad,* 156 Mass. 13. *Carroll* v. *Western Union Telegraph Co.* 160 Mass. 152. *Allen* v. *Smith Iron Co.* 160 Mass. 557. *Young* v. *Boston & Maine Railroad,* 168 Mass. 219. *Ellsbury* v. *New York, New Haven, & Hartford Railroad,* 172 Mass. 130.

Since, for the reasons stated, the exceptions must be sustained, we do not deem it necessary to consider other questions that have been discussed, some or all of which may become immaterial on a new trial.                *Exceptions sustained.*